THE KANSAS CITY, FORT SCOTT & MEMPHIS RAIL-
ROAD COMPANY v. JAMES C. MURRAY.

1. INJURY TO EMPLOYEE—*Hazards of Business—Culpable Neg-
ligence.* Where a freight-train is stopped at a station to take on
four cars loaded with coal that are standing on a siding at that
place, and the conductor, being otherwise engaged, leaves the
train in charge of a brakeman, under whose direction the locomo-
tive is cut off and backed in upon the siding, where it is attached
to the four cars of coal, and the brakeman then takes a position
upon the top of the rear car ready to give signals to the engineer,
and the latter runs the locomotive and cars forward from the sid-
ing, and then begins backing them toward the stationary part of
the train at a rate of about six miles an hour, and when about 400
feet away from that part of the train toward which they are mov-
ing, the engineer, without any signal or necessity, applies the
steam-jam or brake, causing a sudden stop and a violent jerk
which throws the brakeman off and seriously injures him, it can-
not be said that the engineer is free from culpable negligence, nor
that the risk is one of the ordinary hazards of the business which
is assumed by the brakeman.

2. CASE, *Distinguished.* The case of *Mo. Pac. Rly. Co. v. Haley,*
25 Kas. 35, distinguished.

3. EVIDENCE—*Contributory Negligence.* The evidence examined,
and it is *held* that it cannot be said as a matter of law that the
brakeman was guilty of contributory negligence.

4. STATEMENTS, *not Privileged.* Where a surgeon is called to dress
and attend to the wound received by a brakeman, the statements
made by the brakeman to the surgeon with respect to the position
which he occupied immediately preceding the occurrence of the
accident are not confidential or privileged under the provisions of
§ 323 of the civil code.

*Error from Johnson District Court.*

ACTION by *Murray* against the *Railroad Company*
to recover damages for bodily injuries. Plaintiff had
judgment; defendant brings the case to this court.
The material facts are stated in the opinion herein,
filed June 8, 1895.

*Wallace Pratt, I. P. Dana,* and *Chas. W. Blair,* for plaintiff in error.

*Warner, Dean & Hagerman,* and *I. O. Pickering,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by James C. Murray against the Kansas City, Fort Scott & Memphis Railroad Company to recover damages on account of personal injuries alleged to have resulted to him as an employee of said railroad company while in the per-· formance of his duties as such employee, by reason of the fault and negligence of a coemployee. He was employed as a brakeman on a freight-train which ran between Fort Scott, Kas., and Kansas City, Mo., and on August 31, 1889, the train upon which he was working arrived at Miami station, where the Rich Hill branch unites with the main line of the railroad. The train was backed in upon the branch line in order to let a passenger-train which was about due to pass, and the conductor went to the depot to get bills of lading, etc., leaving the train in charge of Murray. Four cars loaded with coal and standing upon a side-track were to be taken into the train at this point, so the locomotive and a car were cut off from the train, and, it being in the night-time, a red light was placed on the end of the train from which the locomotive and car were taken. In the absence of the conductor, Murray had charge of the train, and under his direction the locomotive and car were run forward some distance· and then backed in upon the side-track where a coupling was made with the four cars of coal. The rear car of coal was an open one loaded above the level of the side and end boards with fine coal, and there was a

22—55 KAS.

narrow platform at one end of the car to which a brake-staff was attached. Murray climbed upon the top of the rear car of coal, stationed himself about the center of it, and, with lantern in hand, signaled the engineer to pull out on the main line, which was done. Then, still acting under the directions of Murray, who was acting as brakeman and conductor, the engineer began backing up for the purpose of coupling onto that part of the train which had been left standing 700 or 800 yards from the switch on the main line. To make this connection they had to back over a sag or low place, then up an incline, and as they approached the stationary part of the train, Murray was still standing upon the top of the car ready to signal the engineer when occasion required; and while they were thus running at the rate of about six miles an hour, and were yet about 13 car lengths away from the stationary part of the train, the engineer, without any signal from Murray, or warning to him, applied the steam-jam with the effect of suddenly checking the train and jerking Murray forward upon the car, and before he could regain his equilibrium the steam-jam was again applied by the engineer, causing another jerk, thereby throwing him to the ground and under the moving wheels of the train, so that he was seriously injured.

Testimony was offered in behalf of the railroad company that there was no sudden stop or jerk of the train, but that the engineer, believing that he was close to the stationary part of the train, merely slackened the speed to avoid a collision; and there was also some testimony to the effect that Murray's injury was the result of his own carelessness. The jury, however, found that Murray was in the discharge of his duty, and was using due care at the time of the injury; that he was thrown from the car by the unnecessary action

of the engineer in applying the steam-jam or tank-brake; that he applied it without any signal from Murray, who was in control of .the train at the time, and who had no intimation that the brake was to be applied; and further, that it was not necessary for the engineer in the discharge of his duty, using ordinary care, to apply the brake at the time he did in order to prevent a' collision with the remaining portion of the train toward which he was backing. The company was found to be liable to the plaintiff for the injury, and the damages assessed were $2,500.

It is contended by the company that, taking the testimony of the plaintiff, it fails to show such culpable negligence of the engineer as would make the railroad company liable. It is said that the engineer was not under any duty to give any signal or warning to Murray, and had a right to assume that Murray, who had had considerable experience in the railroad business, would protect himself from the jars and jerks incident to the making up of a train, or to the starting and stopping of a train. It is contended that no preliminary signal or warning to laborers upon the train, to enable them to hold on or secure themselves, is required, and, as the engineer must exercise his judgment with respect to the handling of a train, the company therefore violated no duty toward Murray, and that under the rule of *Railway Co. v. Haley*, 25 Kas. 35, the company cannot be held liable for the injury. We do not think that the rule of 2. Case, distin- the *Haley Case* is controlling in this one.
guished.
Here, according to the testimony of the plaintiff below, the engineer stopped the train with unusual and unnecessary violence, when he had received no signal to stop, and when it was wholly unnecessary to make any kind of stop. Murray was in

charge of the train, acting as conductor, and the engineer should have been governed by the signals which he gave. The engineer applied the brakes and brought the locomotive and cars to a sudden stop when they were more than 400 feet away from the stationary part of the train toward which they were moving. Murray had a right to assume that no unnecessary stop would be made until a signal was given, and until they approached closely to that part of the train toward which they were moving. He also had a right to assume that, in the absence of any signal or obstruction upon the track, no sudden stop would be made by the engineer. In the *Haley Case* the injured party was not in charge of the train, but was an employee engaged in carrying water and tools to other employees upon a construction train, and was picking up a bar near the end of the car when a sudden stop was made which threw him upon the track. The engine was reversed by the engineer and the train stopped to prevent a collision with cattle which came upon or near to the track, and under the circumstances it was held that the action of the engineer in reversing the engine and stopping the train was necessary, and that the company was therefore not guilty of culpable negligence. In that case it was shown that there was no rule or custom of the company which required that any preliminary signal or warning should be given to laborers upon the train, but Mr. Justice BREWER, in a concurring opinion, stated that the existence of·such rules or custom is not conclusive on the question of negligence, and that "it may often be the duty of the courts to pronounce conduct negligent, and grossly so, although sanctioned by the custom of the road and the rules of the company, and forbidden by no statute." In the

present case there was testimony that the engineer was not authorized, under the rules of the company, to apply the steam-brake and stop the train without a signal from Murray; but, apart from that, it cannot be said, upon the testimony offered by Murray, that the engineer exercised that degree of care and diligence which an ordinarily-prudent person in a like position would have exercised. Neither can it be said as a matter of law that Murray was guilty of contributory negligence because he rode on the top of the coal-car rather than on the narrow platform at the front end of the car. He was in charge of the train and was stationed on the top of the rear car so as to enable him to observe the track and the proximity of the other cars, as well as to signal the engineer when occasion required. It may be that the position selected by him was not the safest, but in his choice of positions he was governed by the demand of duty, and it may have been that he was better able to perform the duties required of him in the position taken than he would have been at the other end of the car.

1. Injury to employee— hazards of business— culpable negligence.

3. Evidence— contributory negligence.

The next contention is that error was committed in the admission of testimony that, under the rules of the company, the engineer was not authorized to apply the steam-jam and stop the train without a signal from Murray. The objection was that this was not a proper method of proving the rules, and that they should have been introduced to tell their own story. It does not appear, however, whether the rules were written or printed in whole or in part. If they were written or printed, of course they should have been introduced; but as there may have been rules not committed to writing, it cannot be said that material error was committed in receiving the testimony.

A more serious objection is made to the testimony of Doctor Aikman, a physician and surgeon of Fort Scott, Kas., to which place Murray was taken after his injury. That witness, after stating that he had examined his wound and dressed it, was asked if he had any conversation with Murray at the time about how he received the injury, and to give any statements made by him as to the cause of the accident. An objection was made that the question called for a privileged communication, and the court sustained the objection and excluded the testimony. The excluded testimony was important and material to the defense that was being made. It was the theory of the railroad company that Murray was not standing erect upon the top of the car when the brake was applied, but that he was carelessly leaning over the edge of the car, and that the fall and injury were due to his own negligence. The company proposed to prove that, while the occurrence was fresh in his recollection, Murray had related the circumstances of the accident to Doctor Aikman, and had told him that he leaned over the edge of the car for the purpose of giving a signal to the engineer in order that he might get off and make the coupling, when a jar occurred which threw him off. These declarations, if made, were in direct conflict with the testimony which Murray had given, and if evidence of such declarations is admissible, it might have had controlling influence with the jury. Whether the testimony is privileged and the objection was well sustained depends upon the statute extending the privilege. It provides that if there has been no waiver a physician or surgeon shall be incompetent to testify "concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination

of any such patient,'' etc. Evidence of statements made by a party out of court are admissible in evidence against him unless they are clearly excluded by the terms of the statute. As we have seen, only two exceptions are made by the statute — one, of communications made by a patient with reference to his physical or supposed physical disease or ailment; and the other, of any knowledge obtained by a personal examination of the patient. The statute does not cover communications made by the patient other than those that relate to the disease or ailment for which the physician was called to prescribe or the surgeon to treat. The declarations inquired about in this case did not relate to the physical ailment of Murray, but were with reference to the circumstances preceding the injury. They were not of a confidential character, and were not necessary to enable the doctor to prescribe or to perform any professional duty for him as a surgeon. In Michigan it was held proper for a plaintiff's physician to testify that when called in professionally he was told by the plaintiff that she had sued the defendant and would want him as a witness, since said testimony had no reference to plaintiff's condition. (*Cooley v. Foltz*, 85 Mich. 47. See, also, 19 Am. & Eng. Encyc. of Law, 147, and cases cited.) The exclusion of this testimony was material error, which requires a reversal of the judgment and a new trial of the case. That will be the judgment of this court.

4. Statements, not privileged.

All the Justices concurring.