CHICAGO, R. I. & P. R. CO. v. HUGHES.

No. 7540—Opinion Filed June 12, 1917.

(166 Pac. 411.)

(Syllabus by the Court.)

1. Witnesses—Competency—Physicians.

Where plaintiff, in an action for damages for personal injuries, testified as to the accident which caused the alleged injuries and the nature and extent thereof, and that previous thereto he was in good health and had never suffered similar injuries prior to the accident, and further that he called certain physicians to treat him and gave in detail the examination made and the treatment given by them, and denied upon cross-examination that he had stated to said physicians at the time of the examination that he had previously received a similar injury, and thereafter called one of said physicians as a witness in his behalf and interrogated him as to the examination and treatment rendered to plaintiff, it was proper to ask said physician whether plaintiff had stated to him that he (plaintiff) prior to the time of the alleged accident had suffered an injury similar to one of those for which damages were claimed.

2. Appeal and Error—Objections—Reception of Evidence.

Where a question asked a witness upon cross-examination was objected to by plaintiff upon the grounds of incompetency, irrelevancy, and immateriality, and that the information sought to be elicited was a privileged communication, and the court sustained said objection upon the ground that said evidence was a privileged communication, the action of the court cannot be sustained upon the ground that said question constituted improper cross-examination, where the court and opposing counsel were not apprised of such ground of objection.

3. Commerce—Injuries to Servant—Actions—Federal Employers' Liability Act.

Where the petition alleged, and the undisputed evidence showed, that at the time of the alleged injuries plaintiff was engaged in the services of defendant as a fireman upon a freight train engaged in interstate commerce, the action was governed by the provisions of the federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, c. 149, U. S. Comp. Stat. 1916, secs. 8657-8665), although the provisions of said act may not have been referred to in express terms in the pleadings or pressed at the trial.

4. Master and Servant—Injury to Servant—Assumption of Risk.

It is error to instruct a jury in an action for damages for personal injuries that a servant does not assume such risks as are created by the master's negligence. The true rule in this regard is that the servant assumes all the ordinary risks of the employment which are known to him, or which could have been known with the exercise of

ordinary care to a person of reasonable prudence and diligence under like circumstances; and with reference to risks not naturally incident to the occupation, but which may arise out of the failure of the master to exercise due care in the performance of some duty owing by him to the servant, the rule is that the servant does not assume such risks until he becomes aware of such negligence of the master and of the risks arising therefrom, unless the defect and risk are so apparent and obvious that an ordinary careful person would observe the one and appreciate the other.

### 5. Jury—Jury Trial—Right To.

In an action governed by the provisions of the federal Employers' Liability Act in the courts of this state, the parties are not entitled to a unanimous verdict by a jury of 12 men; but section 19, art. 2, Const. (section 27, Williams' Ann.), authorizing nine or more of the jury to return a verdict applies.

Kane, J., dissenting.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by J. L. Hughes against the Chicago, Rock Island & Pacific Railway Company. There was a judgment for plaintiff, and defendant brings error. Reversed, and remanded for new trial.

C. O. Blake, W. H. Moore, and Edward Howell, for plaintiff in error.

H. H. Smith, for defendant in error.

HARDY, J. J. L. Hughes began this action in the superior court of Pottawatomie county against the Chicago, Rock Island & Pacific Railroad Company to recover damages alleged to have been received on or about the 1st day of July, 1909. The parties will be referred to in accordance with their respective titles in the trial court. The petition alleged that plaintiff was engaged in the services of the defendant as a fireman upon an engine engaged in interstate commerce between Haileyville, Okla., and Booneville, Ark., and while so engaged, by reason of the defective condition of said engine, and the floor of the engine cab and of the water tank on said engine, he was, without fault or negligence upon his part, thrown against the wall and side of said engine and severely injured, maimed, and crippled. Issue was joined, and trial resulted in a verdict for plaintiff, and defendant prosecutes error.

Plaintiff testified as to the accident and the injuries received, and specifically testified that as a result of such accident he received a rupture in the right groin, "a very bad rupture," for which injuries he was examined and treated by Drs. Hailey and Gardner. Upon cross-examination he further testified that prior to the accident he had never had a hernia on the right side, and was asked whether he made the statement, at the time of his examination, to said physicians ritorial Legislature, Kansas adopted a Code horn of a saddle and received a rupture at that point, to which he answered that he did not make such statement. Objection was made to this question, upon the ground that the testimony sought to be elicited was incompetent, irrelevant, and immaterial, and upon the further ground that such statement, if made, was a privileged communication. The objection was sustained; the court expressly placing his ruling upon the ground that, until the plaintiff himself voluntarily testified to such communication, the same was privileged. The answer of plaintiff, however, was not stricken. Plaintiff called as a witness Dr. Gardner, and questioned him as to the result of his examination, developing the fact that he had discovered a right inguinal hernia. Upon cross-examination he was asked whether plaintiff at the time gave him any history of a previous injury or inguinal hernia. Objection was made to this question upon the ground that it was incompetent, irrelevant, and immaterial, and a privileged communication, which objection was by the court sustained. Thereupon defendant dictated into the record the answer which it expected witness would make, from which it appears that said witness, if permitted to answer, would have testified that plaintiff told him that in 1901 he had been injured by being thrown upon the horn of a saddle, and that a rupture or hernia had resulted at that time at the same point.

Error is assigned upon the exclusion of this evidence, in answer to which assignment plaintiff urges that such questions constituted improper cross-examination, and that such evidence, if admissible, should have been reserved and offered as a part of defendant's case in chief, and that the evidence was properly excluded, although this objection was not urged, and although the court based his ruling upon the wrong reason. It is not seriously contended that such evidence was inadmissible by reason of being privileged, if offered at the proper time. The cross-examination of a witness should be confined to the subject-matter of his direct examination. Woods v. Faurot, 14 Okla. 171, 77 Pac. 346; C., R. I. & P. v. Beatty, 34 Okla. 321, 118 Pac. 367, 126 Pac. 736, 42 L. R. A. (N. S.) 984. And the limits to which counsel may be permitted to go in such cross-examination rest largely in the discretion of the trial court. Jones v. Bradford, 79 Minn. 396, 82 N. W. 651; Stewart v. Stewart, 175 Ind. 412, 94 N. E. 564; Davis v. Coblens et al., 174 U. S. 719, 19 Sup. Ct. 832, 43 L. Ed. 1147. So, also, the order in which evidence shall be

received at a trial must, to a great degree, be left to the sound discretion of the trial court, and unless it is made to appear that such discretion has been abused, no reversal will be had because of a ruling with reference to the order in which evidence must be introduced. Ackerman v. Chappell Hdw. Co., 41 Okla. 275, 137 Pac. 349.

Plaintiff urges that, while the objections made to the introduction of said evidence were the general objections of incompetency, irrelevancy, and immateriality, and that it constituted a privileged communication, such objections were sufficiently broad to cover the specific objection that such question was improper. cross-examination of the witness, and relies upon section 5070, Rev. Laws 1910, which provides that such general objection shall be deemed to cover all matters ordinarily embraced within such objections. It has been held that the objection that certain evidence cannot be called for upon cross-examination must be taken on that specific ground, and a mere general objection that the evidence is incompetent, irrelevant, and immaterial is not sufficient to present this objection thereto. Knapp v. Schneider, 24 Wis. 70; Schlencker v. State, 9 Neb. 241, 1 N. W. 857.

The court having excluded the evidence offered upon the ground that such statements were privileged communications, within the protection of the statute, its ruling cannot now be sustained on the grounds that the question asked was improper cross-examination. Phelps v. Fuchs Lang Mfg. Co., 82 N. J. Law, 474, 81 Atl. 728; McGivern v. Steele, 197 Mass. 164, 83 N. E. 405; McCarty v. Johnson, 20 Tex. Civ. App. 184, 49 S. W. 1098; 3 C. J. 825, note 50. Was the proffered evidence privileged? Such privilege was not recognized at common law, and exists in this state by virtue of the statute.

Section 5050, Rev. Laws 1910, is as follows:

"The following persons shall be incompetent to testify: * * * Sixth—A physician or surgeon, concerning any communication made to him by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of any such patient; Provided, that if a person offer himself as a witness, that is to be deemed a consent to the examination; also, if an attorney, clergyman or priest, physician or surgeon on the same subject, within the meaning of the last three subdivisions of this section."

The language and punctuation of the above proviso leaves the meaning obscure and uncertain; but when its history is traced, and it is compared with the original, its meaning is made clear. This section of the Code was taken from the Kansas Code, which was originally patterned after the Ohio Code of 1853. In 1851 Ohio adopted a new Constitution, which required the appointment of a commission to revise the laws of that state as then existing and to provide a uniform mode of procedure. The commission prepared a Code, which was based upon and very similar to the Code contained in the report of the New York commissioners of practice and pleading, published in 1850, and the Code so prepared was adopted by the Legislature of Ohio in 1853, being substantially the same as that now existing in that state. Section 314 thereof enumerated the classes of persons who were incompetent to testify, and also prescribed certain privileges by reason of confidential relations existing between persons therein specified, omitting therefrom the provision relating to physicians and surgeons. The proviso as now contained in section 5050, Rev. Laws 1910, was contained in the Ohio Code as a separate section, numbered 315, and is as follows:

"If a person offer himself as a witness, that is to be deemed a consent to the examination also of an attorney, clergyman or priest, on the same subject, within the meaning of the last two subdivisions of the preceding section."

In 1859, at the fifth session of the territorial Legislature, Kansas adopted a Code almost identical with the Ohio Code. Thompson. v. Wheeler & Wilson Mfg. Co., 29 Kan. 476; School Dist. No. 39 v. Fisher, 23 Okla. 9, 99 Pac. 646; Hepburn's Dev. Code, Pl. 104. Section 324 of the Kansas Code was identical with section 314 of the Ohio Code, and section 325 of the former was identical with section 315 of the latter. In Compiled Laws of Kansas 1879, section 324 of the Code of 1859 is contained as section 323 of the chapter on Civil Procedure, being running section 3851 of said compilation, with the addition of the sixth subdivision relating to communications made to and information obtained by physicians or surgeons; and section 325 of the original Code is carried into section 323 as a proviso thereto, with the language and punctuation identical with that now contained in section 5050, Rev. Laws 1910. By comparing the section as now contained with the original, the meaning is clear that, where a patient offers himself as a witness, that is to be deemed a consent to the examination of a physician or surgeon on the same subject concerning which the patient testifies. When plaintiff testified in his own behalf as to the nature and extent of his injuries, and to the fact that he called Drs. Gardner and Hailey and detailed thei*

examination and treatment of him, this was a consent by him to the examination of said physicians upon the same subject, and to the disclosure by them of information received by them as a result of such examination. Having testified as to the cause of his injuries, and stated that the right inguinal hernia, of which he complained, was the result of the accident alleged, he became subject to cross-examination upon this part of his testimony the same as any other witness, and it was proper to ask him any question that would tend to disprove his testimony, and to show that said injuries were not received at the time and in the manner claimed by him. King v. Barrett, 11 Ohio St. 261; K. C., F. S. & Memphis R. Co. v. Murray, 55 Kan. 336, 40 Pac. 646; Inhabitants of Woodburn v. Henshaw, 101 Mass. 193, 3 Am. Rep. 333.

In Roeser v. Pease, 37 Okla. 222, 131 Pac. 534, plaintiff sought to recover damages alleged to have resulted from being thrown out of a carriage when the team took fright at defendant's automobile. She testified in her own behalf as to the accident and the injuries received, and, further, that for a year previous to the accident she, as a rule, was a healthy woman; that she never had a headache to amount to anything at all. Dr. Grosshart, who was called by her immediately after the accident, testified to the condition which he discovered at the time of his examination; his testimony being confined to this point. After the trial, which resulted in a verdict for plaintiff, defendant learned that, some months prior to the accident, Dr. Grosshart had examined plaintiff and found an enlarged uterus, with a flabby support, and that she complained of pains in the back and head, and that the condition in which he found her was one that would naturally produce headache and pains in her back. The exact point at issue was whether or not these headaches and backaches were permanent injuries, caused by the accident of which she complained. Defendant filed a motion for a new trial on the ground of newly discovered evidence, setting up the testimony of Dr. Grosshart, discovered after the trial. This motion was resisted on the ground that, if called as a witness, the physician would not be permitted to testify, because the information obtained from his previous examination was privileged. The lower court denied the motion, which action was reversed, and in the opinion it was said:

"The effect of her testimony was to lead the jury to believe that she had not suffered from these same afflictions prior to the accident. If she can go upon the witness stand and testify that she had not suffered from these afflictions prior to the accident, and then prevent the only available impeaching testimony from being disclosed by the claim of privilege, it would seem that a mockery is being made of justice, and we do not think that our statute contemplates such a condition. The theory upon which the privilege is based is that a person is entitled to have his physical disabilities protected from public curiosity. If, however, he goes into a court of justice, and bases an action upon the existence of a physical disability, and testifies himself as to its existence or nonexistence, he of course is not entitled to longer claim a privilege for his condition, and the statute does not contemplate protecting him in such a case."

See Fulsom-Morris Coal & Min. Co. v. Mitchell, 37 Okla. 575, 132 Pac. 1103.

An additional reason why the testimony was not privileged is that plaintiff called said physician in chief, and interrogated him concerning his examination and treatment of plaintiff, and specifically asked him whether plaintiff complained of any pain, and particularly in the side, and also whether plaintiff made a statement to him of what his injuries were and how he received them. The statute just quoted declares that plaintiff has waived the privilege given thereby when he testifies himself upon the subject-matter of such privilege; but this method of waiving same is not exclusive. It is universally held, where the patient himself calls the physician as a witness, and has him testify with reference to the subject-matter of a privileged communication, this itself is a waiver of the privilege. 4 Wigmore on Ev., sec. 2390; Morris v. N. Y., etc., R. Co., 148 N. Y. 88, 42 N. E. 410, 51 Am. St. Rep. 675; Thompson v. Ish, 99 Mo. 160, 12 S. W. 510, 17 Am. St. Rep. 552; Wheelock v. Godfrey, 100 Cal. 578, 35 Pac. 317; Sovereign Camp v. Grandon, 64 Neb. 39, 89 N. W. 448; Epstein v. Pa. R. Co., 250 Mo. 1, 156 S. W. 699, 48 L. R. A. (N. S.) 395, note p. 398, Ann. Cas. 1915A, 423. So, when plaintiff called Dr. Gardner and had him testify, he thereby waived the privilege and offered the testimony of said witness in support of his allegations, and, like any other witness, the physician then became subject to cross-examination thereon. The plaintiff cannot call said physician as a witness, and waive the privilege in part and retain same in part, for he cannot, as it is frequently said by the courts, use the privilege both as a shield and a sword. He cannot sever his privilege, and waive it so far as that waiver may be to his advantage, and retain same where a disclosure would be prejudicial. McKinney v. Grand St., etc., Ry. Co., 104 N. Y. 352, 10 N. E. 544; Morris v. New York St. R. Co., 148 N. Y. 88, 42 N. E. 410, 51 Am. St. Rep. 675;

Epstein v. Penn. R. Co., 250 Mo. 1, 156 S. W. 699, 48 L. R. A. (N. S.) 394, and note, Ann. Cas. 1915A, 423; Pittsburg, C., C. & St. L. R. Co. v. O'Connor, 171 Ind. 686, 85 N. E. 969.

In K. C., F. S. & M. R. Co. v. Murray, 55 Kan. 336, 40 Pac. 646, plaintiff brought an action against the railroad company for damages alleged to have resulted to him while in the performance of his duties as a brakeman, by reason of the fault and negligence of a coemploye. One Dr. Aikman, a physician and surgeon, was called as a witness for defendant, and, after stating that he examined the wound and dressed it, was asked if he had any conversation with Murray at the time about how he received the injury, and to give any statement made by Murray as to the cause of the accident. An objection was made that the question called for a privileged communication, and the court sustained the objection and excluded the testimony. This was held error. The court stated that the testimony was important and material to the defense in support of the theory of the railroad company that the injury did not occur in the manner claimed by plaintiff, and that these declarations, if made, were in direct conflict with the testimony which Murray had given as to the manner in which the accident occurred. After quoting the statute, the court said:

"Evidence of statements made by a party out of court are admissible in evidence against him unless they are clearly excluded by the terms of the statute. As we have seen, only two exceptions are made by the statute—one of communications made by a patient with reference to any physical or supposed physical disease or ailment, and the other of any knowledge obtained by a personal examination of the patient. The statute does not cover communications made by the patient, other than those that relate to the disease or ailment for which the physician was called to prescribe or the surgeon to treat. The declarations inquired about in this case do not relate to the physical ailment of Murray, but were with reference to the circumstances preceding the injury. They were not of a confidential character, and were not necessary to enable the doctor to prescribe or to perform any professional duty for him as a surgeon."

See, also. 40 Cyc. 2385.

Since the above decision, section 323, Compiled Laws Kan. 1879, has been carried into the Kansas General Statutes of 1909 as section 5915, and subdivision 6 was amended, so as to embrace any communication as to the time, manner, or circumstances under which the ailment was incurred. The evidence offered by defendant would tend to impeach plaintiff in respect to the cause of the hernia, and if believed by the jury the trial might have resulted in a different verdict, and in any event, had the jury believed a hernia on the right side was the result of a previous injury and was not caused by the accident, the amount of damages which plaintiff was entitled to recover would be materially lessened. The action of the court in excluding such evidence for the reason given was error.

The petition alleged, and the undisputed evidence shows, that at the time of the alleged injuries plaintiff was engaged in the service of defendant as a fireman upon a freight train, engaged in interstate commerce, running between Haileyville, Okla., and Booneville, Ark., and this action is controlled by the provisions of the federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, c. 149, U. S. Comp. Stat. 1916, secs. 8657-8665), although the provisions of said act may not have been referred to in express terms in the pleadings or pressed at the trial. St. L. & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Grand Trunk W. R. Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168. And the provision of section 6, art. 23 (355, Williams' Ann.), Const., making the defense of assumption of risks, in all cases whatsoever, a question of fact for the jury, has no application in this case, and under the operation of said act the law applicable to such defense is that of the common law as it existed prior to the passage of said act, except where the carrier violates the provisions of some statute, enacted for the safety of its employes. There is no contention made that plaintiff's right of action grows out of, or is based upon, the violation of any such statute.

There was no error in refusing to direct a verdict for defendant. This was plaintiff's first trip upon the engine alleged to be defective; the outward trip being made from Haileyville to Booneville, Ark., upon which trip he discovered the defects which are alleged to have caused his injuries and reported same to the engineer, to whom it was his duty under the rules to make such report. Defendant had a roundhouse at Booneville in which repairs could have been made after plaintiff left the engine. On the return trip he was "called on short time" and had little or no opportunity to examine the engine until after the return trip was commenced. He noticed that the intake valve had been wrapped as he had wrapped it the day before, and he raked in the grate and found that an angle bar had been placed over a hole therein. Whether the defect and the risks arising therefrom were so patent and obvious that an ordinarily careful per-

son would observe the one and appreciate the other was, under the facts of this case, a question properly submitted to the jury. Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016; M., O. & G. R. Co. v. Overmyre, 58 Okla. 723, 160 Pac. 933.

In instruction No. 10, submitting the defense of assumption of risk, the court told the jury that a servant did not assume such risks as were created by the master's negligence. Exception was saved to this instruction, and defendant requested the court to charge the jury that, in entering defendant's employment, plaintiff assumed the hazard necessarily incident thereto, and also assumed the hazard as to all conditions which were open, obvious, and patent, and which were known to him, or by the exercise of reasonable care could have been ascertained by him. The rule that the servant never assumes the risk of the negligence of the master is not recognized in the federal courts. Burke v. Union Coal & Coke Co., 157 Fed. 178, 84 C. C. A. 626; C., O. & G. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96. The true rule in that regard in the courts of the United States is that the servant assumes all the ordinary risks of his employment which are known to him, or which could have been known with the exercise of ordinary care to a person of reasonable prudence and diligence under like circumstances; and with reference to risks not naturally incident to the occupation, but which may arise out of the failure of the master to exercise due care in providing a reasonably safe place in which to work and reasonably safe appliances with which to work, the rule is that the servant does not assume such risks until he becomes aware of the defect or improper construction in the place or appliances furnished to him, and of the risks arising therefrom, unless such defect and risk are so patent and obvious that an ordinarily careful person would observe the one and appreciate the other. Texas & P. R. Co. v. Harvey, 228 U. S. 319, 33 Sup. Ct. 518, 57 L. Ed. 852; Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; Seaboard Air Line R. Co. v. Horton. 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1063, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475; Chesapeake & O. R. Co. v. De Atley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016. And the same rule has been announced repeatedly by this court. Osage Coal & Min. Co. v. Sperra, 42 Okla. 726, 142 Pac. 1040; Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659; M., O. & G. R. Co. v. Overmyre, 58 Okla. 723, 160 Pac. 933.

When the court instructed the jury that the servant did not assume risks created by the master's negligence, he withdrew from consideration by them the defense as to such risks. The plaintiff's petition alleged that it was the duty of defendant to keep the engine in a proper and reasonable state of repair, so that same could be easily and safely manipulated by plaintiff, and that said defective condition had been reported to defendant, but that defendant carelessly and negligently failed to make such repairs. All of the evidence offered by plaintiff as to the cause of the injuries tended to sustain these allegations as to negligence upon the part of the defendant, and the instruction in question practically deprived defendant of any defense to said alleged acts of negligence on the theory that plaintiff had not assumed such risks.

There was no error in instructing the jury that nine or more of their number could return a verdict. This is expressly permitted by the Constitution. Section 19, art. 2 (section 27, Williams' Ann Const.). This question was presented in the case of St. L. & S. F. R. Co. v. Brown, 45 Okla. 143, 144 Pac. 1075, where this court held that, in actions in the courts of this state which are governed by the provisions of the federal Employers' Liability Act, the parties are not entitled to a unanimous verdict. This case was appealed to the Supreme Court of the United States, where it was affirmed. 241 U. S. 223, 36 Sup. Ct. 602, 60 L. Ed. 966. The same question had previously been determined adversely to the claim of the defendant by the Supreme Court in Minneapolis & St. L. R. Co. v. Bombolis, Administrator, 241 U. S. 211, 36 Sup. Ct. 595, 60 L. Ed. 961, L. R. A. 1917A, 86, Ann. Cas. 1916E, 505.

As the other questions urged will probably not arise upon another trial, we refrain from a discussion of them.

For the reasons stated, the cause is reversed, and remanded for a new trial.

All the Justices concur, except KANE, J., who dissents, and MILEY, J.. not participating.