**WICHITA FALLS & N. W. RY. CO. v. DAVERN.**

No. 9457—Opinion Filed Dec. 10, 1918.

Rehearing Denied Jan. 13, 1919.

(177 Pac. 909.)

1. **Depositions — Exceptions — Waiver — Statute.**

By virtue of section 5088, Rev. Laws 1910, a deposition intended to be used on the trial must be on file at least one day before the day of trial, but section 5090, Rev. Laws 1910, provides that exceptions to depositions as a whole can be made only in writing and filed with the papers in the case, and where

depositions are received and filed the day of trial but before the commencement thereof, and both parties having knowledge of the filing announce ready for trial without the party against whom the deposition is intended to be used requesting additional time to examine and prepare and file exceptions, held, that he thereby waived the time allowed by the statute, and a formal verbal objection to the deposition at the time it was offered in evidence was properly overruled.

2. **Master and Servant—Federal Employers' Liability Act—Safe Place to Work—Assumption of Risk—Questions for Jury.**

Under the federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. §§ 8657-8665], the servant has a right to assume that his employer has furnished him a safe place to work and has provided him with safe appliances with which to work. He assumes all the normal risks incidental to his employment that are known to him, or which, by the exercise of ordinary diligence and prudence by a person of reasonable caution and intelligence, are ascertainable, and does not include those risks incidental or attributable to the negligence of the employer, until he becomes aware of such negligence and the risks arising therefrom, and in that event it must appear that he not only knew the negligence or defect arising therefrom, but that it endangered his safety, or else the danger must have been so obvious that a person of ordinary prudence in like circumstances would have realized it, all of which are questions of fact for the jury.

3. **Same—Assumption of Risk.**

When a motorcar is being driven by the foreman of a section hand crew at an excessive rate of speed, which causes it to leave the track with resulting injuries to a member of the crew, he will not be deemed to have assumed the risk incident to such excessive rate of speed by a failure to protest against it, and a requested instruction to that effect was properly refused.

(Syllabus by Springer, C.)

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by W. A. Davern against the Wichita Falls & Northwestern Railway Comjany. Verdict for plaintiff, motion for new trial denied on condition of plaintiff's remittitur of certain amount, and judgment for plaintiff; and defendant brings error. Affirmed.

Robinson & Whiteside, for plaintiff in error.

S. P. Jones and S. B. Garrett, for defendant in error.

Opinion by SPRINGER, C. In this opinion the litigants will be referred to in the

relative positions as they appeared in the lower court.

On the 2d day of June, 1916, the plaintiff instituted suit against the defendant in the district court of Jackson county, Okla., to recover the sum of $100,000 damages for personal injuries to him caused by the negligent acts of the defendant and its officers, agents, and servants.

In the petition, among other things, it is alleged that the plaintiff was at said time a citizen and resident of Atica, Mass., and at the time of the injury was an employe of the defendant as a section hand, and that the defendant at said time was engaged in interstate commerce as a common carrier, and that he was engaged in interstate commerce, in that he was preparing and assisting in keeping up the track and roadbed over which the defendant carried on its business as a common carrier, and that, at the time of receiving the injury of which complaint is made, he was returning from work upon a motorcar which was propelled by means of a gasoline engine in charge of Sam Beggs, who was the foreman and in charge of the section hand crew at the particular time of the injury, and that the proximate and direct cause of the injury was defective rails and roadbed and the propulsion of the motorcar by the foreman at an excessive and high rate of speed, which caused the motorcar to leave the track, resulting in the consequent infliction of the injury to the plaintiff.

The answer was a general denial and a plea of contributory negligence on the part of the plaintiff and assumption of risk.

On the 16th day of October, 1916, the case was tried to the court and jury which resulted in a verdict in favor of the plaintiff for the sum of $25,000. A motion for a new trial was filed and presented to the court, and under penalty of granting the same, the plaintiff was required to file a remittitur of $5,000, which was done, and the court thereupon overruled the motion for a new trial and rendered judgment in favor of the plaintiff for the sum of $20,000, from which the defendant appealed to this court, and the case is now before us for review.

We desire to compliment counsel for filing briefs that are concise and to the point on all matters discussed and exceptionally free from redundant matter.

The first question called to our attention is the action of the court in the admission of depositions taken by the plaintiff in the state of Massachusetts. The depositions were taken upon notice, at which time plaintiff was represented by John E. Reagen, who conducted the taking thereof on behalf of the plaintiff, and the defendant was represented by Wm. O. Cutler, who conducted the taking thereof on behalf of the defendant. The depositions are cumulative of the testimony of the plaintiff. The record discloses that the depositions were filed about 9:30 o'clock in the morning, and it is claimed in the brief and oral argument of plaintiff, and not denied by defendant, after the depositions had been filed and published they were handed to and examined by the defendant, and the case was called for trial an hour later, when both the plaintiff and defendant announced ready for trial. During the afternoon of the same day, the depositions of Elizabeth A. Davern, George B. Clough, James F. Burns, James H. Burk, James R. Monteith, Alfred T. Dean, David J. Murphy, and John J. Ahern were offered in evidence, and the defendant objected to the introduction of the depositions in evidence upon the ground and for the reason that they had not been on file one full day previous to the time of the commencement of the trial, which objection was by the court overruled, and it is now urged in overruling the objection the trial court erred. The objection to the introduction of the deposition was made verbally at the time the depositions were offered in evidence, and it is claimed that section 5088, Rev. Laws 1910, is sufficient authority for excluding the testimony thus offered:

"Every deposition intended to be read in evidence on the trial, must be filed at least one day before the day of trial."

The statute had a salutary and wholesome purpose in view in its adoption and is grounded on wisdom and justice. By this statute it was intended that no unfair advantage should be taken by a party intending to prove his case either partially or in whole by depositions. Unless where the right is inherent, as in equity in certain cases, there is no authority to cause depositions to be taken except in those cases where the right is conferred by statutory enactment, and, the right to take and use depositions as evidence being created and controlled by statute, all of the provisions of our statute relative to taking and returning and using depositions must be strictly followed. Depositions are not infrequently taken in foreign states, and even in foreign countries at a place located a great distance from that of the place of the trial and it is often inconvenient for the opposing party to be present in person or represented by counsel during the taking thereof, and the statute above quoted was enacted for the purpose of preventing accident and surprise, and, as above

stated, for the purpose of preventing the party taking the deposition from gaining an unfair advantage by withholding the depositions until the exact moment they are desired to be introduced in evidence, by requiring him to have the depositions on file at least one day before the day of trial. This statute has for its object another purpose, and that is, to give the opposing party an opportunity to examine the depositions for the purpose of ascertaining what, if any, exceptions he may desire to lodge against them. It is manifest the statute has to do with the taking and returning of depositions, but the benefits afforded by this statute are more in the nature of a privilege than an absolute right and may be waived by a party for whose benefit it was intended.

Section 5090, Rev. Laws 1910, provides:

"Exceptions to depositions as a whole shall be in writing, specifying the grounds of objections, and filed with the papers in the cause before the commencement of the trial."

This statute, like section 5088, supra, also has to do with taking and returning depositions, and more. In addition to having to do with taking and returning depositions, it has to do with exceptions to depositions, where such exceptions go to the "whole thereof." This statute, like section 5088, supra, was enacted for the purpose of preventing accident and surprise from intervening as against the party taking the deposition. As above stated, depositions are frequently taken at a place far removed from that of the place of trial, and oftentimes at great expense, and it would be manifestly unfair to permit a party against whom a deposition is intended to be used in evidence to conceal his exceptions to the deposition and lie in wait until the depositions are offered in evidence, and then for the first time, by successfully lodging a formal verbal objection, exclude the depositions entirely. The law does not tolerate an unfair advantage to be thus gained. The instant case furnishes a splendid illustration of the unfairness and injustice that would follow the enforcement of such practice.

The defendant was not entrapped in any way whatever. A notice to take the depositions was duly served. The defendant was represented by counsel, and the witnesses produced for the plaintiff were examined by the defendant, and the defendant thus apprised of all of the testimony contained within the depositions, and, moreover, the evidence is very little else than cumulative. Under such circumstances, the defendant was not deprived of a single substantial right by admitting the depositions in evidence. It is plain that both statutes have to do with the same subject-matter and must be construed together.

Section 5084, Rev. Laws 1910, provides:

"When a deposition has been once taken, it may be read in any stage of the same action or proceeding or in any other action or proceeding upon the same matter between same parties, subject, however, to all such exceptions as may be taken thereto under the provisions of this article."

By this statute either party may introduce in evidence a deposition at any stage of the same action or proceeding, subject, however, to all such exceptions as may be taken thereto under the provisions of this article, which has reference to the exceptions provided for under section 5090, supra.

It is claimed by the defendant that the question presented here was decided by the Supreme Court of the state of Kansas in the case of Garvin v. Jennerson, 20 Kan. 371:

"A deposition to be read on the trial of a case in the district court must be filed at least one day before the day of trial, and the statute means thereby that one clear day must intervene between the filing of the deposition and the commencement of the trial at which it is to be read. To properly compute the time within said statute, both the day on which the deposition is filed, and the day of the trial, are to be excluded."

A careful reading of the Garvin-Jennerson Case, however, will not reveal just how the question was raised on the trial of that case. The Kansas statute with reference to exceptions to depositions in force at the time the case was decided is somewhat different from the assimilating section of our own statute:

"Exceptions to depositions shall be in writing, specifying the grounds of objection, and filed with the papers in the cause." Comp. Laws of Kansas 1879, p. 649, § 363.

The phrases "as a whole" and "before the commencement of the trial" are not contained in the Kansas statute, and under its provisions a party might well prepare written exceptions to depositions during the progress of the trial, and immediately before they were brought forward to be introduced in evidence.

As we view the Kansas case, the controlling question decided by it was the computation of time under the language of the statute, and, as all of the cases cited in its support had reference merely to computation of time, we are led to the conclusion that was the controlling question in the mind of the court at the time the opinion was written, and the case really turns on that question.

The particular facts with reference to the depositions in that case were that the trial started at 9 o'clock a. m. on November 12, 1875, and the depositions were received and filed in court at 11 o'clock a. m. on the 11th day of the same month and year. It seems that the contention in favor of the depositions was made that they had been on file, within legal contemplation, the necessary length of time.

The claim is here made that the exceptions to the depositions were not timely made; that the only way exceptions to depositions "as a whole" can be made is in writing "before the commencement of the trial." The words of our statute "as a whole," and requiring the exceptions to be made in writing and filed "before the commencement of the trial," were intended to prevent the interposition of an objection for the first time when depositions are offered in evidence.

The spacious argument made against the depositions is that the statute using the words "intended to be read in evidence," the plaintiff having announced ready for trial, the defendant had a right to assume that he did not "intend" to use the deposition to which objection was made.

But it is just as forcibly urged on the other side that, the defendant having filed no written exceptions before it announced ready for trial, the plaintiff had a right to assume it intended to waive any exceptions it might have to the depositions. The argument is made in rejoinder that the plaintiff had one full day within which to file its exceptions. We are inclined to agree with the contention of the plaintiff that it did have a day to examine the depositions because the statute gave it that right, but that was a right that it could waive, and when the case was called for trial it was the duty of the defendant to call the matter to the attention of the court and ask for additional time within which to prepare and file written exceptions, and, it having failed to do so and announced ready for trial, we must hold that it waived its right to file written exceptions to the depositions, and that exceptions to deposition as a whole can be made only in writing and filed with the papers, before the commencement of the trial.

Second. It is next claimed that the court erred by refusing to give the following requested instruction:

"You are instructed that if you should find from the evidence the motorcar on which the plaintiff was riding was traveling at an excessive rate of speed, and should you further find from the evidence that the plaintiff continued to ride on the said motorcar, knowing that the same was running at a dangerous rate of speed without making any protest or objection to the party in charge of the car, in that event the plaintiff assumed the danger incident to traveling at such a rate of speed, and in that event the plaintiff could not recover for any injuries sustained in an accident resulting therefrom, and in that event you should find for the defendant."

The evidence discloses that the direct and proximate cause of the motorcar leaving the track was because of its being driven at an excessive rate of speed: the plaintiff himself testifying:

"Q. Mr. Davern, would you undertake to state what was the direct cause of the car jumping the track that day? Would you? A. I would call it fast running. Running that car as fast as it was, the accident was bound to happen at some time or another. If you run a car as light as that one was at the rate of speed we were going, any man with any sense at all, that followed railroading, would say the same thing."

The evidence discloses the car was being driven by and under the control of Sam Beggs, who was at the time foreman and in charge of the section hand crew. At the time the car left the track, the evidence discloses that it was being driven at a rate of speed estimated at 40 miles per hour, and further they had not gone to exceed 2½ miles. They had been traveling less than 4 minutes at the time of the injury. We do not disagree with the general rule announced by the authorities cited by counsel in their brief for the defendant, but we do not believe that the rule therein laid down is applicable to the facts in this case. To apply the rule contended for in the brief of the counsel for defendant would be to hold that the servant had a right to set up his judgment as against that of the master, and, failing to do so, assumed the risk of the injury, which would be a doctrine at variance with all the text-writers and decided cases. We do not believe the issue of assumed risk as contended for by the defendant by failing to protest against the speed of the car under the facts and circumstances of this case is applicable or the correct rule.

"A master's order is at least as much justification for the servant's continuance as would be another's invitation; and we have seen (section 91) that a mere invitation is, in some cases, enough to acquit the person acting upon it from the imputation of contributory negligence. The true rule, in this as in all other cases, is that, if the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto

that, in fact, he does not rely upon the master's opinion. So, if the peculiar risk of the act commanded by the master is not obvious, the servant has a right to assume that he is not sent into an unusual peril, and he is not bound to investigate into the risk, before obeying his orders. A servant is not called upon to set up his own unaided judgment against that of his superiors; and he may rely upon their advice, and still more upon their orders, notwithstanding many misgivings of his own." Shearman & Redfield on Negligence, § 207h, p. 570.

At the time of the injury, the plaintiff was in the attitude of being under the control and authority of the foreman in charge of the crew and car.

"The servant's dependent and inferior position is to be taken into consideration; and, if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not obviously so dangerous that no man of ordinary prudence would have obeyed." Shearman & Redfield on Neg. § 207h, p. 573.

The servant has a right to assume that it is safe to obey orders of the master. It is also the duty of the servant to obey all reasonable orders or commands of the master, and he has no right to set up his judgment as against that of the master.

"The duty of a servant to comply with all lawful and reasonable orders, given by his master with respect to the performance of such functions as fall within the scope of the employment is one of those fundamental obligations which are deemed to be impliedly undertaken as an incident of every contract of hiring. 'A promise by the servant to obey the lawful and reasonable orders of his master within the scope of his contract is implied by law.' Submission to the master's will is the law of the contract. It is sufficiently manifest that no other doctrine would harmonize with the conception that the relation of master and servant is one which arises whenever a contract of employment is made in the terms that the employer shall exercise a control over the employee with respect to the details of the stipulated work." Labatt's Master & Servant (2d Ed.) § 273.

The foreman of the section hand crew has charge and control of those under him, he having charge of a branch of work done by a railway company.

"From the language used in some cases it would seem that a sufficient foundation for the superior servant doctrine is by some judges supposed to be furnished by the obligation of a subordinate to obey the orders of those who are set in authority over him." Labatt's Master & Servant (2d Ed.) § 1449, subd. C, p. 4201.

In support of the text in the case of C. & A. Ry. Co. v. May, 108 Ill. 288, it is said:

"In exercising this power he does not stand upon the same plane with those under his control. His position is one of superiority. When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey, at the peril of losing their situations: and such commands are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences."

The question of rank of employes and the duty of the subordinate to obey the superior was disposed of by the Supreme Court of the United States in the case of C., M. & St. P. R. Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, wherein it is said:

"1. A conductor, having the entire control and management of a railway train, is not a fellow servant with the firemen, the brakemen, the porters, and the engineer of the train; as to them and the train, he stands in the place of and represents the corporation.

"2. For an injury to an engineer of a railroad train, caused by the negligence of the conductor of the train, the railroad company is liable."

A case decided by this court, where the facts are very similar to the facts in this case, is that of Okla. R. Co. v. Thomas, 63 Okla. 219, 164 Pac. 120, L. R. A. 1917E, 405:

"Where plaintiff and another were riding upon the rear of a truck which was being driven at a high rate of speed to a fire, and plaintiff had no voice in the selection of the driver, and no control over his actions or the speed of the truck, but was required by his duties to mount thereon and proceed to the scene of the fire upon an alarm being given and render such assistance as was possible, and while riding thereon a collision occurred between said truck and a street car, resulting in injuries to plaintiff, the negligence, if any, of the driver of said truck cannot be imputed to plaintiff."

The case was tried upon the theory that it was governed by the federal Employers' Liability Law April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. sections 8657-8665), the plaintiff's work consisting in keeping up and in repair the roadbed and tracks of an interstate highway.

Under the federal Employers' Liability Act, the servant has a right to assume that his employer has furnished him a safe place to work and has provided him with safe appliances with which to work. He assumes all the normal risks incidental to his employment that are known to him, or which, by the exercise of ordinary diligence and prudence by a person of reasonable caution and intelligence, are ascertainable, and does

not include those risks incidental or attributable to the negligence of the employer, until he becomes aware of such negligence and the risks arising therefrom; and in that event it must appear that he not only knew the negligence or defect arising therefrom, but that it endangered his safety; or else the danger must have been so obvious that a person of ordinary prudence in like circumstances would have realized it—all of which are questions of fact for the jury. Gila R. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; C., R. I. & P. R. Co. v. Ward, 68 Okla. 201, 173 Pac. 212, C., R. I. & P. R. Co. v. Hughes, 64 Okla. 74, 166 Pac. 411; M., O. & G. Ry. Co. v. Overmyre, 58 Okla. 723, 160 Pac. 933.

By instruction No. 6 the trial court submitted to the jury the question of assumption of risk according to the rule laid down by this court.

The plaintiff was in no position to stop the car, he had no control or authority over it, he had no control or authority over the person in charge of the car, and, on the contrary, the person in charge of the car had control and authority over the plaintiff and had a right to direct and control the speed of the car regardless of any protest the plaintiff might make; and the plaintiff being under the person in charge of the car and subject to his authority, he being a superior servant, it did not become the duty of the plaintiff to protest against the rate of speed at which the car was being driven, and therefore the instruction was properly refused, and the court committed no prejudicial error thereby. The court thereupon overruled the motion for a new trial and rendered judgment for the sum of $20.000.

The evidence in this case discloses a condition calculated to appeal strongly to the sympathy of a jury. One ankle was sprained and bruised; one wrist was broken; one shoulder was broken; one collar bone was broken; the muscle and ligaments in the other arm and hand had perished and wasted away: one side of his face was crushed in; his teeth were knocked out; one eye was destroyed, which required an operation removing it from the socket; the vision in his left eye was destroyed to such an extent that he was not able to discern an object farther than 9 feet that he should have been able to discern a distance of 40 feet: his upper lip was paralyzed, which rendered him unable to control the saliva in his mouth, and it flowed out and down over his clothing; and there exuded from the socket where the eye was removed a pus which ran down over his face and over his clothing, and he was unable to control food in his mouth. Dr. Milliken, testifying, said:

"His face was hideous looking, pitiful, pitiable, and obnoxious. You would want to turn away from him unless you were looking at it from a scientific standpoint."

The evidence discloses further that he was kept in a hospital approximately nine months after the injury, and that at least two operations were performed upon him, and for that purpose he was placed under anesthetics, and that his physical and mental suffering was both intense and severe. At the time of the trial he was unable to perform necessary personal tasks for himself, such as dressing himself, and absolutely incapacitated for the performance of any labor whatever.

In the case of C., R. I. & P. R. Co. v. De Vore, 43 Okla. 534, 143 Pac. 864, L. R. A. 1915F, 21, it was held that the recovery of $15,000 by a locomotive engineer for the loss of an eye was not excessive. Section 5033, Rev. Laws 1910, authorizes the court to grant a new trial where excessive damages are announced, or where the verdict appears to be given under the influence of passion or prejudice.

The record discloses that the plaintiff was not a resident of this state. and was a laborer in the employ of the defendant, and probably not known to a member of the jury who sat in the trial of his case. Considering the fact that the condition of the plaintiff was such as to appeal strongly to the sympathy of the jury, and the further fact that suit was brought for $100,000, we do not think there is anything in the verdict returned by the jury that indicates that it was rendered under passion and prejudice. The plaintiff was a strong, able-bodied man, being at the time 47 years of age, a man of industrious and sober habits, a man given to considerable reading and well informed on current issues, and while he was not following his trade at the time of the injury, and perhaps had not done so for a number of years, he was nevertheless a skilled laborer.

And while we hold that the verdict of the jury was not rendered under circumstances indicating prejudice and passion. we also hold that the judgment of the court is not excessive.

It follows that the judgment of the court should be, and the same is, affirmed.

KANE, RAINEY, MILEY, and TISINGER, JJ., concur in conclusion only.

By the Court: It is so ordered.