Juanita KUYKENDALL, Plaintiff in Error,

v.

James D. KUYKENDALL, Defendant in Error.

No. 36761.

Supreme Court of Oklahoma.

Oct. 18, 1955.

Rehearing Denied Nov. 22, 1955.

Frank Seay, Seminole, Harland A. Carter, Okmulgee, for plaintiff in error.

George R. Inglish, Okmulgee, for defendant in error.

PER CURIAM.

This action involves the custody of the minor child of James D. Kuykendall and Juanita Kuykendall. James D. Kuykendall brought an action for a divorce against his wife, Juanita Kuykendall, and she was granted the divorce on her cross-petition and the custody of their child, Scarlett Kuy-

kendall was divided between the father and mother so that the father would have her custody upon certain weekends and vacation periods. It appears that the mother had had the custody of the child and had provided it with a comfortable home, medical and hospital care, and the love and attention which a child of tender years requires. All of the evidence reflects that the child had a congenital disease, or illness which some of the doctors described as an asthmatic condition superimposed by an allergy. By reason of this condition she was required to be on a special diet, under the constant care of a physician, was subject to sudden attacks of the disease, and had to have all of the special attention and care required to sustain the life of a sickly child. Dr. B. testified that he had been the child's attending physician since she was nine months of age; that during the first part of December, 1954, the child had been hospitalized under his care; that she had to be kept on a particular diet; that he was acquainted with the home in which she lived, the conditions under which the child was kept, and that the child had received nothing but the best of attention; that the child should not be removed from its present home and environment; that any change of abode, or any change from its normal routine would be detrimental to the health of the child. Dr. R. testified that he had seen the child from time to time professionally, and had seen her on two occasions while in the hospital at Okemah; that the child suffers from recurrent, acute episodes of extrinsic bronchial asthma of a type that requires special supervision, flares up from time to time and requires immediate treatment; that the child should be under continuous supervision by its mother, and should remain as near as possible to its most familiar surroundings; that to remove the child from its mother and its home for the weekend or overnight would be dangerous and harmful to the child's health. Under the order of the trial court the father and his family were permitted to have physicians of their choice examine the child. They chose Dr. H. and Dr. M., who did examine the child and diagnosed its condition as bronchitis and coryza superimposed on an allergy, and in their opinion she was properly a hospital patient. The trial court thereafter made an order designating Dr. M. as an impartial physician, and Dr. M. appeared and testified at the trial in substance that his diagnosis was essentially the same as that of the other doctors. Under interrogation by the trial court, the doctor testified as follows:

"Q. You have examined this child, Doctor, and I want you to give me an expert opinion on which is going to be to the best interest of the child?

"A. I will just put it this way. As I advise all mothers, that their child should be kept at home, and disturbed as little as possible. Because they are under the same environment, the same surroundings. Its food, outside exercise, and rest should be routine as far as possible. Any time that is broken, it is not good for the child. Regardless. You have asked me a pointed question."

There was testimony, that while the child was in the hospital, the father, James D. Kuykendall, with certain of his relatives entered the room where the child was confined and attempted to forcibly remove the child, cursing and assaulting visitors in the hospital room and creating such a disturbance that those in charge of the hospital were obliged to call the police and have him placed under arrest. During this episode it appears that he stated in substance, with opprobrious epithets, that he would never return the child to its mother once he had gotten it into his possession. This statement of his violent conduct is corroborated by a number of witnesses and is not denied.

It also appears in the record that the mother's character and fitness to have the custody of the child was above reproach. The fact that she has provided her child with a comfortable home, the necessities of life, hospital and medical care and bestowed upon the child all of the love and kindness to which an infant is entitled is not only affirmatively shown by the record, but is not denied by the father.

The plaintiff in error by her appeal urges that the action of the trial court in refusing

to award her the absolute care and custody of her minor child was an abuse of discretion and was contrary to all of the evidence. In deciding questions of this character we are guided by the following statutory provisions and our previous interpretations thereof.

30 O.S.1951 § 11, Anno.

"In awarding the custody of a minor, * * * the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; * * *." 12 O.S.1951 § 1277, Anno.

"Care and custody of children.—

When a divorce is granted, the court shall make provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect, whenever circumstances render such change proper either before or after final judgment in the action."

■ The defendant in error in his brief urges that a change in condition must be shown to modify a divorce decree. Citing Jackson v. Jackson, 200 Okl. 333, 193 P.2d 561. We discussed Jackson v. Jackson, supra, in the case of Morgan v. Morgan, Okl., 268 P.2d 855, in which we pointed out that there is nothing in the language used in the Jackson case, supra, indicating any limitation upon what may be taken into consideration in passing upon the question as to whether there has been a change of circumstances sufficient to justify a change in custody. That the entire determination of the question must be in the light of what is to the child's best interest. Thus, where it affirmatively appears from the record that the trial court has failed to resolve the question in that manner this Court will rectify the judgment in the light of the evidence. This statement will also answer the proposition urged by defendant in error that where it does not appear that the trial court has abused its discretion in making an order for the custody of a minor child the Supreme Court will not reverse the order of the trial court.

■ ■ Defendant in error also urged that a divorced father should have some rights concerning the custody of his minor child. We have not yet departed from the statement of the law and the reasons therefor as announced in the case of Bruce v. Bruce, 141 Okl. 160, 285 P. 30, 37, in which we said:

" * * * Courts will not deprive a mother of the custody of her children where the record clearly shows that she is a fit person to have the custody and care of them. Courts know that mother love is a dominant trait in the heart of a mother, even in the weakest of women. It is of divine origin, and in nearly all cases far exceeds and surpasses the parental affection of the father. Every just man recognizes the fact that minor children need the constant bestowal of the mother's care and love. It is for these reasons courts are loath to deprive the mother of the care and custody of her children, and will not do so, as above remarked, unless it clearly appears that she is an improper person to be intrusted with their care and custody. * * *"

In the more recent case of Marcum v. Marcum, Okl., 265 P.2d 723, 728, in which the right of a mother's custody to her child was involved, we made the following statement:

"In the case of Goertzen v. Goertzen, 194 Okl. 207, 148 P.2d 982, 983, this court held:

" 'In awarding the custody of a child, as between divorced parents, the court is to be guided by what appears to be for the best interest of the child. Freeman v. Freeman, 190 Okl. 74, 120 P.2d 627. As between parents adversely claiming the custody of a child, neither is entitled to its custody as of right, but other things being equal, if the child be of tender years, it should be given to the mother. 30 O.S.1941, § 11.' "

■ The defendant in error also contends that certain depositions admitted in evidence on behalf of plaintiff in error was erroneous by reason of 12 O.S.1951 § 448, as follows:

"Every deposition intended to be read in evidence on the trial, must be filed at least one day before the day of trial."

Citing Garvin v. Jennerson, 20 Kan. 371, and Chicago, R. I. & Pac. Ry. Co. v. Jackson, 63 Okl. 32, 162 P. 823. In the case at bar it appears from the record that on the 8th day of December, 1954, attorney for plaintiff in error mailed to attorney for defendant in error a notice to take depositions by registered mail, return receipt requested, on the 13th day of December, 1954, at a specific time and place. The record shows that the attorney for defendant in error received the notice on the 9th day of December, 1954, and that the depositions were taken at the time and place designated in the notice. The notices and service thereof appear to be regular in every respect, and the depositions were taken in accordance with the notice. According to the record the depositions were taken on December 13, 1954, and filed with the court clerk on December 27, 1954, at 8:55 A.M., and the case came on for trial on December 28, 1954, at 10:00 o'clock A.M., and the depositions were admitted in evidence at sometime thereafter. It is undisputed that the depositions were on file more than 24 hours "before the commencement of the trial".

We have heretofore given consideration to the Garvin v. Jennerson case cited by the defendant in error, and pointed out that the Kansas Statute and the Oklahoma Statute are somewhat different. In the case of Wichita Falls & N. W. Ry. Co. v. Davern, 74 Okl. 151, 177 P. 909, it was pointed out that 12 O.S.1951 § 448, supra, had an assimilating section, and that the two sections must be construed together. The assimilating section being 12 O.S.1951 § 450, as follows:

"Exceptions to depositions.—

Exceptions to depositions as a whole shall be in writing, specifying the grounds of objections, and filed with the papers in the cause before the commencement of the trial."

There we pointed out that the phrases "as a whole" and "before the commencement of the trial" are not contained in the Kansas Statute. We also stated that by this statute it was intended that no unfair advantage should be taken by a party intending to prove his case partially or in the whole by deposition, by withholding the depositions until the exact moment they are desired to be introduced in evidence, but requiring him to file them at least one day before trial. We also stated that this statute was enacted for the protection of the party taking the deposition as well. So that he would not be surprised by the filing of an objection to the deposition at the very moment the same was offered in evidence. In the case at bar, the record discloses that the giving of the notice to the taking of the same was regular in every respect. The depositions were filed at least one day before the commencement of trial. The defendant in error published the depositions and filed his objections to the same before the commencement of trial. Thus, each party was afforded all that the law intended. We have specifically stated in Cunningham v. North British & Mercantile Ins. Co., 179 Okl. 550, 66 P.2d 515, 517, in construing 12 O.S.1951 § 448:

"We construe this to mean that the deposition must be filed in the case on trial at least one day before the trial."

It might be observed that a portion of the evidence admitted by deposition was cumulative and even had the evidence by deposition been excluded our opinion would have been the same, since all of the other testimony could have led us to but one conclusion.

For reasons hereinabove stated, it is the judgment of this Court that the absolute care, custody, control and education of the minor child, Scarlett Kuykendall, be awarded to her mother.

The father will be permitted to visit the said child every two weeks for a period of three hours, at a time and place agreeable to both the father and the mother of said child. In case they cannot agree on the time and place, then at a time and place to be fixed by the trial court.

132

The judgment is therefore modified with directions to the trial court to proceed consistent with the views herein expressed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY and JACKSON, JJ., concur.